**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: 23-CR-00163-CKK |
| v. | |
| | 40 U.S.C. § 5104(e)(2)(G) |
| JON LIZAK, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Jon Lizak, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Lizak traveled by car to Washington D.C. to attend the rallies at the U.S. Capitol on January 6, 2021. Prior to doing so, he met up with Joseph Brody, Paul Lovely, Thomas Carey, and Gabriel Chase.

9. On January 6, 2021, Lizak attended the rally at the U.S. Capitol and entered the U.S. Capitol building with Brody, Lovely, Carey, and Chase where the Capitol had been breached by rioters. Their movements inside the U.S. Capitol building were captured by surveillance cameras and open-source videos.

10. Lizak and his group entered the U.S. Capitol building through the Senate Wing door along with many other rioters at approximately 2:16 p.m. that day. The group then

proceeded towards the Crypt. After a few minutes, the crowd within the Crypt pushed past law enforcement personnel and proceeded south into a room containing busts of historical figures, known as the "Corridor of Honorary Citizens." The group moved with the crowd down the hallway and near several offices, including "Office of the Clerk," and "Office of the Majority Leader | Steny H. Hoyer."

11. Lizak and his group reentered the Crypt and entered a room containing a spiral stairwell. The subjects ascended the stairwell, and the crowd can be heard chanting the words, "NANCY! NANCY! NANCY!" At the top of the stairwell, the subjects continued forward and enter a small atrium, which displayed a plaque reading, "Speaker of the House | Nancy Pelosi." Defendant and his group entered inside a conference room for Speaker Pelosi's Office.

12. Lizak and his group left Speaker Pelosi's Office and entered the Rotunda. The group loitered within the Rotunda for several minutes. At approximately 2:42 p.m., after departing the vicinity of the Rotunda, the group of subjects marched together and ascended the House Gallery Stairs to the third level of the Capitol, where they then proceeded through the Senate East Corridor. They proceeded to the Senate Chamber and stopped outside of the doors labeled respectively as Secretary of the Senate's Office and the Senate Gallery Door Number 1.

13. The Senate Chamber—where part of the Joint Session for the Electoral College Certification vote would normally have been taking place, in accordance with 3 U.S.C. 15, and the 12th Amendment to the U.S. Constitution—was instead filled with rioters. Brody broke off from his group of associates and entered the Senate Chamber, where his actions were captured by several Senate Recording Studio cameras. While in the Chamber, Brody appeared to hold a cell phone in his hand and photograph or record the interior of the Senate Chamber—to include documents or other information on and inside several desks.

14. Finally, at approximately 2:50p.m., the group began to exit the Capitol—one at a time—through the Senate Carriage Door. Carey exited the building at approximately 2:50:08 p.m., followed by Lovley and Chase at approximately 2:50:20 p.m. Approximately a minute and a half later, at 2:51:40 p.m., Brody and Lizak exited the Capitol.

15. Eventually, the subjects moved to the north side of the Capitol. There, Lizak observed Brody lifting a metal barricade and appearing to use it to obstruct or assault a law enforcement officer by pushing it up over a concrete station and against a law enforcement officer attempting to address the crowd of rioters with what appears to be fire-extinguisher retardant or chemical-irritant spray.

16. After observing the attempted breach of North Door into the U.S. Capitol building, Lizak and his group moved to an area in the vicinity of the U.S. Capitol where news media had set-up broadcasting equipment. Metal barricades had been erected around the equipment. A group of rioters had breached the metal barricade and destroyed and looted the media equipment. Lizak and his group also took some items from the pile of media equipment.

17. Lizak willfully and knowingly entered the U.S. Capitol Building knowing that he did not have permission to do so. Defendant further admits that while inside the Capitol, defendant willfully and knowingly paraded, demonstrated, or picketed as his presence and actions on that day were part of a statement about the presidential election and state of the nation.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *[signature]*

Joseph Huynh
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Jon Lizak, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: s/5/23

JON LIZAK
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5/8/23

KEVIN J. KEATING
Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | HON. COLLEEN KOLLAR-KOTELLY |
| | : | |
| JON LIZAK, | : | Crim. No. 23-CR-00163 |
| | : | |
| Defendant. | : | |
| | : | |

## STATEMENT BY THE UNITED STATES IN SUPPORT OF GUILTY PLEA

**The Charged Offenses:**

**Count 1:** 40 U.S.C. § 5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building)

**Penalties for Count 1:** Class B misdemeanor (petty offenses under 18 U.S.C. §19)
A term of imprisonment not more than 6 months
A fine not to exceed $5,000
A special assessment of $10.
A term of probation of not more than 5 years may be imposed.

**Elements of the Offense in the Plea**

Pursuant to a written plea agreement, dated November 4, 2022, the Defendant agrees to plead guilty to Count Four of the Information, which charges him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

To prove that the Defendant is guilty of Parading, Demonstrating, or Picketing in a Capitol Building, the government must prove the following beyond a reasonable doubt:

a. That the Defendant paraded, demonstrated, or picketed;

b. That the Defendant did so in any of the Capitol Buildings; and

c. That the Defendant did so willfully and knowingly.

The terms "parade" and "picket" have their ordinary meaning. The term "demonstrate: refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.

## Maximum Penalties for Count of Conviction

The maximum penalties for Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G), are:

   a. a term of imprisonment not more than 6 months;
   b. a fine not to exceed $5,000; and
   c. a special assessment of $10.

A term of probation of not more than 5 years may be imposed.

## Sentencing Guidelines

A violation of Title 40, United States Code, Section 5104(e)(2)(G) is a class B misdemeanor, as defined by Title 18, United States Code, Section 3559(a)(7). Accordingly, pursuant to § 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2021), the Sentencing Guidelines do not apply to this violation, not does the right to a jury trial, or any imposition of supervised release.