IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| - against - ) | Case No.: 23-cr-00163-CKK-1 |
| ) | |
| JON LIZAK, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### I.   INTRODUCTION

Jon Lizak, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. This Court is well-familiar with the facts and circumstances of this case having, among other things, presided over the sentencings of related defendants, Gabriel Chase; Thomas Carey, and Paul Lovley. Like the others, Lizak plead guilty to a one count Information charging the class B misdemeanor of Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104 (e)(2)(G). Of course, this matter represented Lizak's first involvement in the criminal justice system as he is, otherwise, an extraordinary young man whose young life has been characterized by hard work, academic achievement, and devotion to his mother. As set forth below, these events also resulted in a 180˚ reset of Lizak's young life. At 22, he is now engaged to be married, actively engaged as a volunteer firefighter, and is utilizing his Business Management degree in his new career path operating and directing the two Long Island businesses which have been owned by his mother for many years.

Lizak was a 19 year old college student when he entered the Capitol Building as a non-violent demonstrator on January 6th. As simply and eloquently noted by Lizak in his attached letter (Exhibit A), "I was wrong." The consequences have been, and will remain, life altering, and he

has fully accepted responsibility. For all these reasons, as more detailed below, joined by the Probation Department, it is respectfully submitted that a probationary sentence is appropriate.

**II.     JON LIZAK'S, OTHERWISE, COMMENDABLE LIFE'S HISTORY**

As noted, Lizak is 22 years old, and was a 19 year old college student on January 6th. He was born and raised on Long Island, New York, the middle child of his parents marital union. His older sister is 25 and is attending college in pursuit of a graduate degree to become a Physician's Assistant, and his younger brother is 18 and is a college freshman.

Lizak's grammar school years were rather typical, but when he was ten, his parents suddenly divorced at which time his father relocated to Riverhead, New York, approximately 40 miles from the family home. As set forth in the PSR, Lizak's father thereafter began a relationship with another, which severely limited the amount of time Lizak spent with his dad, with whom he had shared a close father-son relationship. Notably, this led to a years long period of estrangement during which Lizak was without a father figure.

Lizak attended Cold Spring Harbor High School, and immersed himself in activities and sports. He played football, wrestling and track. He was also a member of the debate team's Honor Society, and also participated in theatre. Never a partier, or part of the high school social scene, the last time Lizak tried alcohol was when he was 16 years old. He graduated as an above-average student, with no disciplinary history.

In September 2019, Lizak enrolled at Binghamton University in upstate New York as a Business Management major. Commendably, Lizak completed the four year Bachelor of Arts program in three years, graduating in May, 2022. At college, Lizak was an active participant in the college Republican Club, and a writer for the school newspaper. Once again, Lizak graduated with above-average grades and without any disciplinary history.

Upon graduating, Lizak moved back home to his family's Long Island home. In 2021, Lizak joined the Cold Spring Harbor Volunteer Fire Department. He remains an active participant in this organization and has obtained his Firefighter 1 Certification, rendering him a full interior firefighter who can enter burning buildings. He responds to both medical and fire first responder calls. Lizak's first full-time employment after college was working as a legislative aide for a New York State Representative. The employment was brief as Lizak was placed on leave when the instant charges were filed in September 2022. Soon thereafter, his life and career path turned in a different direction.

For more than 20 years, Lizak's mother has owned and operated a child daycare facility on Long Island. The original facility opened twenty years ago and a second facility recently opened. In September, 2022, Lizak decided to commit himself to working with his mother in the operation of the facilities. He has become the Assistant Director, and has utilized his Business Management degree in helping to streamline the business and increase their profitability. In two months, Lizak will earn his Child Development Associate Degree, which will allow him to take on additional roles, such as Childcare Director.

Finally, as set forth in the PSR, Lizak is engaged, and will be married in November 2023. He has been in a relationship with his fiancé for nearly three years and she, too, is now employed in the family business. Lizak and his wife plan on residing in Huntington on Long Island.

As can be seen, Lizak's brief life's history has indeed been characterized by hard work, law abiding conduct and admirable behavior. Nearly three years removed from the unplanned events of January 6th when he was 19 years old, there is every reason to expect that Lizak's life's path will continue to be virtuous.

**III.     18 U.S.C. §3553(A) FACTORS**

    **A.     The Nature and Circumstances of the Offense**

The general events of January 6th are familiar to the Court and require no further elaboration. Lizak's conduct that day is also familiar to the Court, as it was the same as that engaged in by his three friends who have already been sentenced—Gabriel Chase; Thomas Carey, and Paul Lovely. Like them, Lizak was certainly not an organizer or leader of the conduct, in fact, at the time he was a 19 year old college student. Lizak arrived in Washington DC on the morning of January 6th expecting a peaceful, lawful, non-violent protest. Ultimately, Lizak and has friends wrongfully entered the Capitol through an open door. It is undisputed that Lizak did not push or disparage any member of law enforcement, nor did he engage in any acts of violence. Once inside, he walked through the Capitol Building, and did not engage in the destruction or damage to any property.

    **B.     Mr. Lizak's History and Characteristics**

Lizak's personal history is set forth in section II above. Enclosed are several letters which amplify and further detail his life's history, commendable past, and promising future.

Jon Lizak offers an unvarnished, reflective and mature view of the events of that day, and his thoughts on his present priorities in life which have pivoted significantly since he was 19 years old (Exhibit A). It is respectfully submitted that Lizak's reflective testament is deserving of this Court's strongest consideration.

Lizak begins by maturely and simply stating, "I was wrong." He then describes his journey which lead to his presence in Washington on January 6th. Always having a laudable interest in politics and public policy, Lizak notes that his personal inner anxiety over not "fitting in" as a typical "partying" college kid lead him to "lean into my political hobby," which lead him to join

4

various political organizations. As expressed by Lizak, over time he came to learn what one such group actually represented:

> The group was not just one of hatred for others but of self-hatred. Free-thinking was discouraged, self-improvement was ridiculed and ordinary events such as having a job and getting a girlfriend caused one's complete exiling. It was this heinous dehumanization that lead many fools like myself to follow the call to attend the rally on January 6th.

Lizak notes that, indeed, there was no premediated plan to enter the Capitol on January 6th. Rather, the rally began similar to others that he had lawfully attended. However, the event turned and Lizak, commendably, notes that he realized then that he should not have been where he was.

Lizak notes that *prior to his arrest in this case*, he severed all ties with these groups, "In 2021, I found myself unfulfilled, depressed, and guilt ridden, the root cause being my attachment to an immoral and unsuccessful political organization. My solution was to promptly cut ties and move on with my life." He notes that he "double downed" on schoolwork and "stacked his schedule," enabling him to graduate a year early. He describes his life today as quite different and, "good—I have a fulfilling job, a loving family, and supportive friends, I have my firehouse, my gym, my animals and three weeks from today I will have a beautiful wife." Concluding, he offers, "the man who sits before you today is one far removed from the mistakes of the past, and I ask the Court for leniency."

Lizak's fiancé, Taylor Bandemer offers an insightful testimonial (Exhibit B). She describes their courtship beginning in 2020 and, noting that she too comes from a divorced family, offers her view that Jon's immersion in public policy and political causes at the age of 19 stemmed from the fact that, "Jon lacked a father figure in his life, I believe he was still seeking something or some cause to direct him." She notes of Jon's maturity since he was 19 years old, and that "since he left that path, he has refused to miss a single Sunday mass, firefighting training, alone time with his

5

younger brother, a date night with me, and a day of work." She writes of their impending marriage, and their desire to quickly have a child.  Concluding, she advises "Jon will be an amazing father, as I have already seen him with kids on a day to day basis and they all love him.  Our love for each other is endless and I wouldn't want to be with anyone else."

Lizak's mother offers a moving testimonial (Exhibit C).  She writes of Jon's "normal" young childhood which took a turn when he was ten when she and her husband divorced.  She notes that, initially, Jon saw his father regularly but this changed in short order and a long period of estrangement resulted between Jon and his father.  At this time, Jon became the "man of the house" and father to his little brother.  She notes that this lead to an early maturity in Jon who became the "voice of reason" among his high school friends and Jon ignoring the partying scene and "choosing a healthy lifestyle."  She writes of her son's committed relationship of three years to his fiancé and their impending marriage.  She advises of the significant contribution Jon has made to her longstanding business which has become more profitable resulting from Jon's hard work and business management skills.  She notes that she anticipates a long future in the business for Jon, and looks forward to working with him for years to come.  Finally, she notes of Jon's commitment to the Fire Department and his religious faith.  She describes her son as a "good man" who has learned dearly from his singular mistake as a 19 year old college student.  She, of course, seeks leniency from the Court.

Finally, Reece Bandemer, the sister of Lizak's fiancé, offers an insightful testimonial (Exhibit D).  She writes that she met Jon in 2020, when he and her sister began to date.  She notes that she has come to know Jon as an "older brother".  She writes of his "exceptional character" noting "he continuously shows kindness, understanding and compassion".  She also advises that Lizak has "played a significant and transformative role in my spiritual journey by introducing me

to Catholicism. . . through his example I witnessed the importance of prayer, community, and service to others in living a fulfilling Christian life". She notes that Lizak's, "influence has strengthened my relationship with God".

In short, it is respectfully submitted that Jon Lizak's history and personal characteristics are of the highest order as he continues to reset his life and build his future, marked by hard work, community volunteerism, and devotion to his family.

    C.    **It is Respectfully Submitted that Mr. Lizak Poses No Risk of Recidivism**

While perhaps there are a few certainties in life, it can fairly be said with a high degree of confidence that Jon Lizak poses no risk of recidivism. As noted, this event occurred when he was a 19 year old college student without an arrest or disciplinary record of any nature. Entering the Capitol Building was wrongful, but it was a spontaneous unplanned event during which Lizak did not engage in violence or the destruction of property in any form.

In the aftermath of the event, unlike others, Lizak did not post or make incendiary or inflammatory comments. In fact, as set forth herein, Lizak moved his life in the opposite direction. Commendably, he accelerated his courseload and graduated a year early, and moved back to his family home with his mother, sister and younger brother. At the same time and (prior to the initiation of charges), he joined his local volunteer Fire Department where he actively remains engaged as a first responder, rededicated himself to his Catholic religion, and embarked on a fulfilling and promising career path with his mother in co-directing the family's business. As noted, he also works side by side with his fiancé as they approach their impending wedding date.

As attested by all, Jon Lizak is living a fulfilling, laudable and virtuous life as he begins his next chapter of starting a family.

     **D.**       **The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants**

Of course, 18 U.S.C. §3553(a)(6) instructs that the Court must consider the need to avoid unwarranted sentencing disparities among similarly situated defendants. This Court is certainly aware of the widely available Sentencing Table which tracks sentences that have been meted out by District Court judges to January 6th defendants, and categorizes them by the specific nature of the offender's conduct.

Here, Lizak's conduct falls squarely into the category of a first arrest, B misdemeanor "parading case," involving walking into the Capitol through an open door, without pushing or violence of any nature and without the destruction of property. The undersigned could readily provide the Court with a string citation of cases from the Sentencing Table in which District Court judges have imposed non-incarceratory probation sentences in this category of case. It is presumed that this Court is already aware of such sentences under similar facts.

At the same time, Your Honor has already imposed split styled sentences on Messers. Chase, Carey and Lovley, with each receiving a probation sentence, along with three days intermittent confinement for Chase, and 14 days intermittent confinement for Carey and Lovely. But, no two cases are identical and the statute instructs the need to avoid *unwarranted* sentencing disparities. On this, it is respectfully submitted that Jon Lizak's life's path since his unplanned entry into the open Capitol Building entryway as a 19 year old college student *uniquely* demonstrates his remorse and total separation from the events of that day. Soon after these events, as set forth above, Lizak began putting in place the building blocks of his future, beginning with

8

the acceleration of his courseload which allowed him to graduate from college and move home a year early.[1]

As set forth in Lizak's enclosed letter to the Court, soon after these events Lizak began a "mindset shift that has significantly affected my life over the past few years". As set forth above, for Lizak, these are not hollow words, as the trajectory of his life has moved in a completely different direction. For him, it was indeed a 180° reset, deserving of this Court's strong consideration.[2]

## IV.   CONCLUSION

As set forth herein, joined by the Probation Department, it is respectfully submitted that a non-incarceratory probation sentence is appropriate in this matter. Lizak's enclosed reflective and remorseful accounting of his act of parading as a 19 year old is deserving of this Court's strongest consideration. Moreover, as noted, his words are quite genuine as, following these events and well before the initiation of charges, Lizak changed the trajectory of his life. His present life is laudable in *every* respect, and there is every reason to believe that his future will continue to be characterized by hard work, volunteerism, and a commitment to his family.

---

[1] Of course, the undersigned is not privy to the sentencing recommendation made by the Probation Department for the three related defendants. Here, as noted, the Probation Department has recommended a term of probation without any incarceration for Lizak.

[2] We are also mindful of the Circuit's recent decision in *United States v. Little*, No. 22-3018, (D.C. Circuit, 8/18/23) which held that a Court cannot impose a sentence of probation and imprisonment for a single petty offense under 18 U.S.C. §3561(a)(3), while at the same time leaving open the issue of whether the Court could impose a probation sentence along with brief periods of intermittent confinement, pursuant to 18 U.S.C. §3563(b)(10). Here, it is respectfully submitted that, with or without *Little,* a term of probation is appropriate.

Dated: Garden City, New York
September 22, 2023

                                                 Respectfully submitted,

                                                 LAW OFFICE OF KEVIN J. KEATING, P.C.

                                                 /s/ *Kevin J. Keating*

                                                 By: Kevin J. Keating, Esq.
                                               *Pro Hac Vice Counsel for Defendant, Jon Lizak*
                                               666 Old Country Road, Suite 900
                                               Garden City, New York 11530
                                               (516) 222-1099
                                               kevin@kevinkeatinglaw.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 22nd day of September 2023, I cased a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to all parties in this matter.

                                               /s/ *Kevin J. Keating*